IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| Kai Stumpf, individually, and as personal representative for the Estate of Siglinde Stumpf, Deceased, and on behalf of all people entitled to claim under the law, | § § § § § | C.A. NO. |
| Plaintiff, | § § | |
| v. | § § | |
| Carnival plc, and Utopia Cruises, Inc., | § § § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT AND
REQUEST FOR MANDATORY INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Kai Stumpf, individually and as personal representative and administrator of the Estate of Siglinde Stumpf, Deceased ("Decedent Stumpf"), and on behalf of all persons entitled to claim under the law ("Plaintiff"), complaining only of Carnival plc and Utopia Cruises, Inc. (collectively "Defendants"), and for causes of action, would respectfully show unto this Honorable Court the following:

**I. PARTIES**

1.1   Plaintiff is a citizen and resident of Germany.

1.2   Defendant Carnival plc is a foreign entity duly organized, created and existing pursuant to the laws of England and Wales, and at all material times was an alter ego of, among other entities, Utopia Cruises, Inc., nominal owner of the MS *Carnival Triumph*. Carnival plc does not maintain a principal office in this State or District, or a designated agent for service of process in this District, and cannot otherwise be found within this District. Nonetheless, Carnival plc is subject to

this Court's general and specific jurisdiction by virtue of property owned by it presently located, or to be located, within this District. Upon information and belief, Carnival plc was formerly known as P&O Princess Cruises plc, and/or P&O Princess.

1.3     Defendant Utopia Cruises, Inc., is a foreign entity duly organized, created and existing pursuant to the laws of Panama, and at all material times was the owner of the MS *Carnival Triumph*. Utopia Cruises, Inc., does not maintain a principal office in this State or District, nor a designated agent for service of process in this District, and cannot otherwise be found within this District. Nonetheless, Utopia Cruises, Inc., is subject to this Court's general and specific jurisdiction by virtue of property owned by it presently located, or to be located, within this District.

## II. JURISDICTION

2.1     The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1333 because the suit involves admiralty and maritime jurisdiction. This case is brought pursuant 28 U.S.C. § 1333, the general maritime law and Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions, Rule B, Federal Rules of Civil Procedure.

2.2     Plaintiff also brings his causes of action pursuant to the Death on the High Seas Act, supplemented by the laws of Italy.

## III. VENUE

3.1     Venue is proper in this District as to all Defendants pursuant to the admiralty and maritime laws of the United States, Rule 82 Fed. R. Civ. P.

## IV. FACTS

4.1     The foregoing paragraphs are re-alleged as though fully again set forth.

4.2     On or about January 13, 2012, the MS *Costa Concordia*, carrying over 4,200 passengers and crew, struck a rock offshore Isola del Giglio, Grosseto, Italy.

4.3     In the chaos and terror that followed, at least 25 people lost their lives, including Decedent Stumpf. Seven are still missing as of this filing, and hundreds more were injured.

4.4     This tragic allision in part resulted from the commission of an intentional if not negligent action perpetrated by the so-called captain of the *Costa Concordia*, in an ill-conceived attempt to "salute" the inhabitants of Isola del Giglio, or "honor" past and present crew members who lived on the island, as well as the failure of Carnival plc to implement a proper safety management system and controls.

4.5     Instead of a salute, it was an obscene and deadly gesture; instead of honor, it was shame. The grounding of the *Costa Concordia* was a tragedy, but the plan for passenger safety and evacuation was a travesty, leading to loss of life for some, including Decedent Stumpf, and pain, suffering and ongoing trauma for hundreds.

4.6     Carnival plc was in part the cause of the pain, suffering and death caused to Decedent Stumpf and her fellow passengers. Carnival plc is ultimately responsible for preparing and maintaining safety programs for all companies and vessels under its control, including the *Costa Concordia* herself. Carnival plc was ultimately responsible for ensuring the crew of the *Costa Concordia* was familiar with the safety programs, and was trained to follow them.

4.7     Most importantly, Carnival plc was ultimately responsible for ensuring the crew of the *Costa Concordia* adhered to the safety programs and followed them in an emergency, applying those programs and their training to evacuate the passengers of the *Costa Concordia* safely, and without injury or loss of life.

4.8     Carnival plc failed to fulfill its responsibility under governing laws and regulations. As a result, many people died and many people were injured.

4.9     Carnival plc is being sued for its independent acts of negligence, gross negligence, wrongdoing, negligent acts and omissions, all of which caused and contributed to the *Costa Concordia* tragedy, the loss of life by Decedent Stumpf and others, and the injuries of hundreds more.

## V.  ALTER EGO / SINGLE BUSINESS ENTERPRISE

5.1     The foregoing paragraphs are re-alleged as though fully again set forth.

5.2     On April 17, 2003, Carnival plc and Carnival Corporation completed a dual listed company ("DLC") transaction, which implemented a corporate structure in which Carnival plc owns and claims the assets of Carnival Corporation.

5.3     Carnival plc claims a portfolio of cruise brands in North America, Europe, Australia, and Asia, including Carnival Cruise Lines, Holland America Line, Princess Cruises, Seabourn, AIDA Cruises, Costa Cruises, Cunard, Ibero Cruises, P&O Cruises (Australia) and P&O Cruises (UK).  In its 2011 annual report, Carnival plc represents that "[t]ogether, these brands operate 99 ships totaling 196,000 lower berths with 10 new ships scheduled to enter service between May 2012 and March 2016."

5.4     In short, when it represents itself to the public, Carnival plc claims the revenues, income, earnings, assets, carrying capacity, employees and vessels operating as Carnival Cruise Lines.  Utopia Cruises, Inc., is one of its claimed assets and its single asset is the MS *Carnival Triumph*, and is the <u>alter ego</u> of Carnival plc, as more fully and specifically stated herein.

5.5   As alleged above, Utopia Cruises, Inc., is a foreign entity duly organized, created and existing pursuant to the laws of Panama, and at all material times was the owner of the MS *Carnival Triumph*. Utopia Cruises, Inc., has no physical place of business or employees. It is paper Panamanian company established to avoid the law and taxes as a flag of convenience entity.

5.6   Carnival plc is an alter ego of Utopia Cruises, Inc. In reality, Carnival plc, is the true and beneficial owner of the MS *Carnival Triumph*, currently or soon to be located in this District. It is also the true and beneficial owner of the MS *Costa Concordia*, upon which Decedent Stumpf was killed.

5.7   Utopia Cruises, Inc., is likewise an alter ego of Carnival plc and is a mere instrumentality or conduit through which Carnival plc conducts its business, and is accordingly liable for the acts and failures to act of Carnival plc.

5.8   Carnival plc and Utopia Cruises, Inc., have common owners, officers and directors. Specifically, the president of Utopia Cruises, Inc., is Micky Arison, also the Chairman of the Board and Chief Executive Officer of Carnival plc. The Vice President and Treasurer of Utopia Cruises, Inc., is Howard S. Frank, the Vice Chairman of the Board and Chief Operating Officer of Carnival plc. The Secretary of Utopia Cruises, Inc., is Arnaldo Perez, the Senior Vice President, General counsel and Secretary of Carnival plc.

5.9   The directors of Utopia Cruises, Inc., are Micky Arison, Howard S. Frank, and Arnaldo Perez.

5.10   When Carnival plc accounts for its assets, revenues, passenger carrying capacity, and vessels, it does not exclude the MV *Carnival Triumph*, and so counts that vessel as one of its own assets.

5.11     Because Carnival plc includes the MV *Carnival Triumph* as one of its vessels for purposes of aggregating its own worth and financial condition and abilities to the public, the form of Carnival plc and Utopia Cruises, Inc., should be disregarded for the following reasons, among others:

- 5.11.1    because failing to do so would allow the corporations to be used to perpetrate a fraud on Plaintiff and others, in that Carnival plc on the one hand can claim the vessel as part of its holdings, but avoid responsibility when the vessel is called upon to secure a just and valid claim;

- 5.11.2    as stated in their public filings with the International Financial Reporting Standards as adopted by the European Union ("IFRS"), and the United States Securities and Exchange Commission ("SEC"), Defendants represent the corporations were organized and operated as a mere tool or business conduit of the other, which is further supported by their structure, in which the very same senior management of Carnival plc is the very same senior management of Utopia Cruises, Inc., and Utopia Cruises, Inc., has no employees, effectively a Panamanian shelf company;

- 5.11.3    because failing to disregard the separateness of the corporations would allow both to be used to evade existing legal responsibilities, specifically the seizure of an asset nominally owned by Utopia Cruises, Inc., for a liabilty of its alter ego, Carnival plc;

- 5.11.4    because it would work an injustice to allow Utopia Cruises, Inc., inadequately capitalized with a mere US$10,000, but owning a vessel with a newbuilding price of $410,000,000 to alone be responsible for the liabilty of Carnival plc, which claims millions and millions of dollars of revenue and assets;

- 5.11.5    because as Carnival plc itself proudly admits, it is being operated as a single business enterprise with Utopia Cruises, Inc., and its related entities;

- 5.11.6    because in order to allow the public claims Carnival plc makes to be true, the entities are commingling assets, at least to the extent of Carnival plc not excluding the ship owned by Utopia Cruises, Inc., as an asset of Carnival plc;

- 5.11.7    because, as alleged more fully above, there is a complete identity personnel between the officers and directors of Carnival plc, and the officers and directors of Utopia Cruises, Inc.;

    5.11.8    because there is a lack of discretion shown by the dominated entity, Utopia Cruises, Inc., and its related entities, as it does not even have an address listed on its corporate summary;

    5.11.9    because Carnival plc enters into transactions with Utopia Cruises, Inc., and its related entities, which are not at arm's length. Nearly $2,000,000,000 has been loaned between Carnival plc and Utopia Cruises, Inc., and its related entities, <u>without security or collateralization</u>, which, considering Utopia Cruises, Inc.'s, minuscule initial capitalization, cannot be considered "arm's length," and shows the entities are completely co-mingled. In addition, each has agreed to guarantee the debts of the other, in mirroring transactions, such that they have officially and formally commingled their identities, and appear to be the mirror image of the other. Indeed, this guarantee of debt by Carnival plc shows domination of Carnival plc over Utopia Cruises, Inc., and its related entities.

    5.12    For the foregoing reasons, among others, Carnival plc and Utopia Cruises, Inc., are alter ego corporations which are not entitled to maintain the fiction of their separate existence, and thus the true owner of the MS *Carnival Triumph* is Carnival plc, which owns, controls and operates the aforementioned entity, and its vessels.

### VI. CAUSES OF ACTION
### Negligence

    6.1    The foregoing paragraphs are re-alleged as though fully again set forth.

    6.2    Carnival plc is liable for the death of Decedent Stumpf and Plaintiff's damages by reason of its negligence in failing to prepare and maintain safety programs for all companies and vessels under its control. Carnival plc was ultimately responsible for ensuring the crew of the *Costa Concordia* were familiar with the safety programs, and were trained to follow them.

    6.3    Most importantly, Carnival plc was ultimately responsible for ensuring the crew of the *Costa Concordia* adhered to the safety programs and followed them in an emergency, applying

those programs and their training to evacuate the passengers of the *Costa Concordia* safely, and without injury or loss of life.

6.4    Utopia Cruises, Inc., as an alter ego of Carnival plc, a mere instrumentality or conduit through which Carnival plc conducts its business, is accordingly liable for the acts and failures to act of Carnival plc.

6.5    The acts of Defendants constitute negligence, which was a proximate cause of Decedent Stumpf's death, and the injuries and damages suffered by Plaintiff.

## Gross Negligence

6.6    The condition of the MS *Costa Concordia* and her appurtenances encountered by Decedent Stumpf exposed her to extreme hazards. By allowing, requiring, or condoning the so-called captain of the MS *Costa Concordia* to maneuver Carnival plc's vessel as he did, and to allow to exist, or fail to correct, the deplorable safety practices, poor training, and lax or deficient evacuation procedures on board the MS *Costa Concordia*, Defendants were on notice of the dangerous condition onboard the vessel. Nonetheless, Defendants ignored these maneuvers, and the deplorable, poor, lax or deficient procedures on board, and exposed Decedent Stumpf to the consequences of their actions.

6.7    Defendants proceeded with knowledge or conscious indifference that their failure to prepare and maintain safety programs for all companies and vessels under their control, and their failure to ensure the crew of the *Costa Concordia* adhered to the safety programs and followed them in an emergency, applying those programs and their training to evacuate the passengers of the *Costa Concordia* safely, would result in injury and/or death to their passengers, including Decedent Stumpf. Despite that knowledge, and the understanding a high likelihood existed that injury or death

would result from their acts or failures to act, Defendants proceeded in disregard, and subjected Decedent Stumpf to the dangerous and deadly conditions which resulted from these acts and failures to act.

## VII.  DAMAGES

7.1    The foregoing paragraphs are re-alleged as though fully again set forth.

7.2    As a direct and proximate result of Defendants' conduct, including negligence and gross negligence, Plaintiff suffered, or is entitled to claim, the following injuries and resultant damages, including, but not limited to:

    7.2.1    pre-death physical pain and suffering;

    7.2.2    pre-death mental anguish for Decedent Stumpf, and his own mental anguish;

    7.2.3    lost earnings;

    7.2.4    loss of consortium and society;

    7.2.5    loss of services;

    7.2.6    punitive and moral damages;

    7.2.7    all such other and further damages as allowed by law, including but not limited to attorneys fees and costs.

## VIII.  RULE B ALLEGATIONS

8.1    The foregoing paragraphs are re-alleged as though fully again set forth.

8.2    Plaintiff is informed and believes that neither Carnival plc nor Utopia Cruises, Inc., are now within this District, that neither Carnival plc nor Utopia Cruises, Inc., maintain an office within this District, that neither Carnival plc nor Utopia Cruises, Inc., are incorporated in, or are registered to do business in, the State of Texas, nor have any officers or directors in the District, that

neither Carnival plc nor Utopia Cruises, Inc., have an agent for the receipt of service of process in this District, and that neither Carnival plc nor Utopia Cruises, Inc., can be found within this District for purposes of the Supplemental Rules for Certain Admiralty and Maritime Claims, Rule B, of the Federal Rules of Civil Procedure.

8.3     Plaintiff is informed and believes Defendants have, or will soon have, property owned or controlled by them, in this District, including, but not limited to, the MS *Carnival Triumph*.

8.4     Plaintiffs seek an order of attachment from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, attaching any assets of Defendants, including the MS *Carnival Triumph*, for the purpose of securing jurisdiction over the Defendants, and to secure Plaintiff's claims as described above.

## IV. REQUEST FOR MANDATORY INJUNCTIVE RELIEF

9.1     The foregoing paragraphs are re-alleged as though fully again set forth.

9.2     Plaintiff will seek injunctive relief from this Court, ordering Defendants to preserve and produce the Voyage Data Recorder from the MV *Costa Concordia* (its so-called "Black Box"), or, if not in the possession of Defendants, then the information from the Black Box from on or immediately before the January 13, 2012, disaster involving the MV *Costa Concordia*, including without limitation, vessel position, speed, heading, radar data, audio recordings, depth, alarms, hull openings, watertight and fire door status, hull stress, rudder order and feedback response, engine, thruster and/or propeller order and feedback response, and wind speed and direction.

9.3	In addition to the Black Box data, Plaintiff will also seek injunctive relief from this Court, ordering Defendants to preserve and produce the phone traffic lists and schedules of phone calls made on January 13, 2012, and immediately following, between Messrs. Arison, Foschi, Carnival plc executives and employees and Costa, particularly as those relate to issuing evacuation orders and the order to finally launch the Mayday signal, and public relations coverup as to the true facts of this disaster.

9.4	In addition to this data, Plaintiff will also seek injunctive relief from this Court, ordering Defendants to preserve and produce the personal computer(s) used onboard by the captain of the MV *Costa Concordia*, as well as Carnival plc's computer records, which were on information and belief taken from the vessel, given to an employee of Carnival plc, and have not since been produced or made publically available.

9.5	This evidence needs to be preserved not only because it is essential to proving both the negligence and gross negligence of Carnival plc, but also goes to its conduct, which is intentional, in that Carnival plc, operating as Costa Cruises, knew that the MV *Costa Concordia* was sinking well in advance of notifying passengers to evacuate the ship. As such, these actions were expected or intended from the standpoint of Carnival plc, and constitute at a minimum manslaughter if not murder.

9.6	The law and equity favors the injunctive relief to be sought by Plaintiff, in that Plaintiff has or will suffer irreparable injury if the evidence is not preserved, Plaintiff has no adequate remedy at law, Plaintiff can and will demonstrate a likelihood of success on the merits, the balance of hardship clearly favors Plaintiff, and the public interest is and will be served by the

preservation of this evidence and information.  Plaintiff is willing to post the appropriate bond in connection with any injunction ordered.

      WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that:

(a)     process in due form of law according to the practice of this Honorable Court issue against the Defendants summoning each to appear and answer, all and singular, the matters aforesaid;

(b)     process of maritime attachment and garnishment issue to attach and seize the goods, chattels, credits and effects, of Defendants, including, but not limited to, the MS *Carnival Triumph*, to secure Plaintiff's claims as described above;

(c)     as soon as practicable following the attachment and/or seizure of any goods, chattels, credits and effects of Defendants, a further hearing be held by this Court pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure;

(d)     judgments be entered in favor of Kai Stumpf, individually and as personal representative and administrator of the Estate of Siglinde Stumpf, Deceased ("Decedent Stumpf"), and on behalf of all persons entitled to claim under the law, in the amount of $10,000,000, as against the Defendants, representing his actual damages in an amount exceeding the jurisdictional limits of this Court, together with prejudgment and postjudgment interest, excluding from this sum any amounts for his claim for punitive damages, which he leaves to the discretion of this Court, guided by its conscience, attorney's fees, and costs of suit, and that a decree of condemnation issue against the property of Defendants;

(e)     injunctive relief as requested be granted; and

  (f)  Plaintiff be granted such other and further relief to which he may show himself to be justly entitled.

Dated:  March 30, 2012    Respectfully submitted,

                **GILMAN ✤ ALLISON LLP**

                */s/ Douglas T. Gilman*
                Douglas T. Gilman
                State Bar No. 24048496
                Federal I.D. No. 19897
                9307 Broadway, Suite 407
                Pearland, TX 77584
                Telephone: 888 225 5767
                Facsimile: 866 543 3643
                Email:  dgilman@gilmanallison.com

                ATTORNEY-IN-CHARGE FOR PLAINTIFF

**OF COUNSEL**:

GILMAN ✤ ALLISON LLP
Brenton J. Allison
State Bar No. 24040417
Federal I.D. No. 36863
Email:  ballison@gilmanallison.com

EAVES LAW FIRM
John Arthur Eaves, Sr.
State Bar No. 00795951
101 North State Street
Jackson, MS 39201-2811
Telephone: 601 355 7961
Email:  johnjr@eaveslaw.com